IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BROWN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CV-0758-MJR-PMF |
| ) | |
| ROGER E. WALKER, JR., JASON C. ) | |
| GARNETT, GREGORY LAMBERT, ROY ) | |
| BRADFORD, JULIE WILKERSON, KEN ) | |
| BLACK, LEE RYKER, JOYCE ) | |
| HOSKINSON, ROBERT F. KUNTZ, ) | |
| NEIL BANTICAN, and MELODY J. ) | |
| FORD, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Before the Court is a motion for partial summary judgment (Doc. 53). In this § 1983 action, plaintiff James Brown challenges four aspects of his prison confinement. This motion targets one of Brown's retaliation claims, specifically Count 4, which arose during Brown's confinement at Lawrence Correctional Center. In Count 4, Brown seeks relief from defendants Hoskinson, Bantican, Kuntz, Ryker, Ford and Walker Jr., alleging that they retaliated for his exercise of free speech rights by imposing discipline in October, 2006. The motion is opposed (Doc. 61).

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *accord, Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. Cir. 2008); *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party (here, Ryburn). *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

In response to summary judgment, the non-movant cannot rest on his pleadings. Rather, the non-movant must provide evidence on which the jury or court could find in favor of the non-movant. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). As the Seventh Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32 (7th Cir. 2009) (citation omitted) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006)).

Stated another way, to counter a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in his pleadings; more substantial evidence must be presented. And a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## II. Retaliation

An act performed in retaliation for the exercise of a constitutionally protected right will subject the actor to liability even where the act, if taken for a different reason, would have been proper. *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978). In order to prevail on Count 4, Brown must prove (1) that he was engaged in constitutionally protected speech and (2) that public officials took adverse actions against him. *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). He must also establish that the protected activity caused the defendant to retaliate. *See Gunville v. Walker*, 583 F.3d 979, 984 n.1 (7th Cir. 2009) ("Until the Supreme Court's recent decision in *Gross v. FBL Financial Serv[ices], Inc.*, plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision. After *Gross*, plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise." (citation omitted) (citing *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009); *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009))). At the summary judgment stage, the plaintiff must come forward with some evidence of causation; "mere speculation" is not sufficient. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008).

## III. Joyce Hoskinson

Defendant Hoskinson argues that the evidence does not prove the third element of Brown's retaliation claim: that her actions were motivated as a response to his protected speech. The evidence, viewed in Brown's favor, shows that Hoskinson was the mailroom supervisor at Lawrence Correctional Center in 2006. In April, 2006, Brown sent packages to Mr. Salvador Godinez and Mr. Brian Fairchild. For these items, he tried to use a special procedure reserved for "legal" or "privileged" outgoing mail. Brown was dissatisfied with the manner in which the mailroom staff handled the Godinez and Fairchild materials. On April 16, 2006, he filed a grievance accusing

Hoskinson of misconduct. On April 29, 2006, Brown sent a separate notice to Hoskinson, directing her to "Forward this mail without any further delay." Hoskinson did not accuse Brown of violating prison disciplinary rules at that time.

On October 24 and 25, 2006, Brown carefully reviewed regulations regarding outgoing mail and attempted to send three items using the special procedure reserved for legal mail. These items were addressed to C A Insurance, Inc.; Jenkins Foods CEO and Leslie Dardon, Spokeswoman.[1] All three items were returned to Brown with form requests that he use the correct procedure. One form explained that legal envelopes could not be used for regular mail. Another form explained that everything except legal and privileged mail must be left unsealed, and that the items he was mailing were non-legal. Brown formed the impression that Hoskinson mishandled his outgoing mail. Specifically, he thought she invented and implemented rules and procedures that did not exist. He was not alone in reaching that conclusion; other inmates, including Jamar Miles and Mickey Simon, formed the impression that Hoskinson mishandled their outgoing mail.

On October 25, 2006, Brown wrote a letter to Hoskinson which included the following remarks: "be advised first and [foremost] I don't have to explain the following to you, herein, at this point I will" and "[f]orward my legal mail out with no further delay." (Doc. 61-2 at 35.) When Hoskinson received the letter, she followed her usual procedure. She consulted a coworker assigned to the "internal affairs" division for advice as to whether Brown's conduct violated the prison disciplinary code. Following the initial consultation, she drafted a disciplinary report and sought review of her draft. She signed a disciplinary report charging Brown with three code violations: insolence (code 304), intimidation and threats (code 206) and abuse of privileges (code 310). The body of the report explains that Brown attempted to send non-legal mail as legal mail and that

---

[1] The mail was related to his efforts to settle a potential product safety claim regarding potato chips.

4

portions of his letter were perceived as intimidating. Hoskinson based her decision to accuse Brown of disciplinary violations on Brown's conduct and her own consultations with a coworker. She did not initiate the disciplinary charges in retaliation for Brown's complaints and grievances.

Brown points to several facts in an effort to show that a jury might discount the weight accorded to Hoskinson's statements. She wrote a disciplinary report in October, 2006, but did not write a similar disciplinary report six months earlier when Brown sent a notice instructing her to "forward this mail without any [further] delay." Also, Hoskinson has not supported her statements with internal affairs documents or an affidavit from the coworker with whom she conferred. Moreover, Hoskinson's copy of the disciplinary report contains two signatures that do not appear on the copy Brown received. These facts do not reasonably permit an inference that Hoskinson was motivated by feelings of retaliation when she authored the October 26, 2006, disciplinary report. *See Springer*, 518 F.3d at 484 (noting that the prospect of a witness credibility challenge does not avoid summary judgment).

Brown also presents facts suggesting that Hoskinson had a history of poor job performance and should not have been annoyed or irritated by his letter calling mistakes to her attention. In these circumstances, Hoskinson's response to Brown's correspondence was rational. She did not exaggerate her response in such a manner as to lend support to the retaliation claim.

In sum, James Brown has not supported this retaliation claim. Defendant Joyce Hoskinson is entitled to judgment in her favor on Count 4.

### IV. Neal Bantican and Robert Kuntz

These defendants also seek summary judgment on the basis that Brown cannot prove the third element of his retaliation claim: that his protected speech caused their retaliatory actions. In particular, Bantican and Kuntz state that they were unaware that Brown was engaged in protected speech at the time they heard and resolved the disciplinary report file by Hoskinson. Brown

responds that these defendants acted on behalf of defendant Hoskinson when they found him guilty of insolence and imposed sanctions.

Bantican and Kuntz served as members of an adjustment committee and heard the disciplinary charges lodged against Brown on October 31, 2006. At the disciplinary hearing, Brown provided a written statement and presented envelopes that had been rejected by the mailroom. Kuntz told Brown that "you were going to sea, it looked bad for you" and asked Brown to step out of the room. While Brown stood outside the hearing room, Kuntz made a phone call. When the hearing resumed, Bantican and Kuntz decided that Brown was not guilty of two of the charges but that he was guilty of insolence. They based their decision on a review of evidence, including the language used by Brown in his letter and his claim that he was using a metaphor as a figure of speech. The sanctions were minimal, consisting of a short commissary restriction. Also, Kuntz advised Brown against writing more letters to Joyce Hoskinson. During this time, neither Bantican nor Kuntz were aware that Brown had engaged in protected speech.

Brown's theory is that Bantican and Kuntz were determined to punish him on behalf of Joyce Hoskinson. He points to irregularities in the hearing procedure and comments suggesting that his guilt of the charges was presumed or unsupported or both. Because the evidence could not reasonably permit an inference that Bantican or Kuntz were motivated to find Brown guilty of insolence because of Brown's protected speech, these defendants are entitled to judgment in their favor.

**V. Lee Ryker**

Ryker also seeks judgment in his favor on the basis that the evidence does not show that Brown's protected speech caused Ryker's alleged retaliatory conduct. Brown responds that Ryker had full knowledge of the incident, gleaned from his own correspondence.

In October, 2006, defendant Ryker was the warden at Lawrence Correctional Center. On October 3, 2006, Brown filed a grievance describing official misconduct and mail tampering. On October 25, 2006, he sent Ryker a copy of his letter to the mailroom supervisor. The following day, Brown sent Ryker correspondence describing mailroom mistakes and requesting the names of mailroom employees. On November 3, 2006, Ryker reviewed Brown's grievance and declined to evaluate the grievance on an emergency basis.

On November 5, 2006, Ryker reviewed a report summarizing the adjustment committee's decision regarding the disciplinary charges against Brown. Ryker approved the adjustment committee's recommendation after confirming that the report contained information indicating Brown's guilt of insolence, that the punishment was appropriate and that Brown had received the procedural safeguards outlined in the regulations.

Viewing the evidence in Brown's favor, Ryker was aware that Brown was pursuing a grievance, which qualifies as protected speech. *See Babcock*, 102 F.3d at 275 (recognizing that prisoners have the right to seek administrative remedies to their conditions of confinement claims). Yet, the evidence does not permit the inference that Ryker's knowledge that Brown was pursuing a grievance was a motivating factor for his decision to accept the adjustment committee's recommendation regarding the disciplinary charge of insolence. Suspicious timing only fuels speculation, which does not establish a retaliatory motive. *Springer*, 518 F.3d at 484; *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). Absent evidence suggesting that a retaliatory motive played a part in Ryker's decision to accept the adjustment committee's recommendation or other adverse actions, Ryker is entitled to judgment in his favor.

## VI. Roger E. Walker, Jr. and Melody J. Ford

Defendants Roger E. Walker Jr. and Melody J. Ford challenge Brown's retaliation claim on the basis of insufficient personal involvement. As noted above, Brown must prove that these

defendants took adverse actions against him. Liability under § 1983 results from personal responsibility. That is, the evidence must show that Walker and Ford knew about the retaliatory conduct and facilitated it, approved it, condoned it, or turned a blind eye. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Brown responds that Walker should have been informed about the serious nature of his grievances and had a legal duty to "deal with the situation" and make a final determination on his grievances. He believes that Walker and Ford denied his grievances in order to conceal staff misconduct.

During his confinement, Brown sent correspondence and copies of his grievances to Walker and other high-ranking officials. One such letter was sent in July, 2006. The evidence does not indicate whether Walker actually reviewed any of those materials.[2]

Defendant Ford was a member of the Administrative Review Board (ARB) in October, 2006. When Brown attempted to appeal the outcome of his grievance to the ARB, Ford returned Brown's grievance and explained that it was untimely and would not be addressed further.

There is no evidence that Walker took adverse actions against Brown or that he was personally involved in retaliatory conduct. Similarly, there is no evidence that Ford's decision to return Brown's grievance appeal was caused by a desire to retaliate for Brown's protected speech. Accordingly, judgment will be entered in favor of Walker and Ford on Count 4.

## VII. Conclusion

Defendants' motion for summary judgment (Doc. 53) is **GRANTED**. At the close of this case, judgment will enter against Brown and in favor of Joyce Hoskinson, Neal Bantican, Robert Kuntz, Lee Ryker, and Melody J. Ford on Count 4. Because all claims against Hoskinson, Ryker,

---

[2] The regulations give the directors of IDOC the authority to delegate the review of those materials to someone else. Ill. Admin. Code tit. 20, § 504.805 (Westlaw through March 12, 2010). Walker was director of the IDOC at the time.

Kuntz, Bantican, and Walker have been resolved, they are terminated as parties. Brown's remaining claims (Counts 1–3) remain as to Jason C. Garnett, Gregory Lambert, Roy Bradford, Julie Wilkerson, Ken Black and Melody J. Ford.

    **IT IS SO ORDERED.**

    **DATED March 23, 2010.**

    s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**