IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES BROWN,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) )   No. 07-758-MJR-PMF |
| **ROGER E. WALKER, JR., et. al.,** | ) ) ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is a motion for summary judgment filed by defendants Black, Wilkerson, Bradford, Lambert, and Garnett (Doc. No. 65). In this § 1983 action, plaintiff James Brown challenges aspects of his prison confinement. Some of plaintiff's claims have been resolved by prior rulings (See Doc. Nos. 75, 76). This motion targets Counts 1 and 3, which arose during Brown's former confinement at Big Muddy Correctional Center. Count 1 is based on allegations that fellow inmate Erick T. Smith assaulted Brown by closing Brown's cell door on him on November 6, 2005. Count 3 arose when Brown was transferred to Lawrence Correctional Center on March 15, 2006. Both events have been characterized as retaliation claims, based on earlier reports by Brown raising concerns regarding prison operations. The cell door incident with Erick T. Smith has also been identified as an Eighth Amendment claim (Doc. No. 6).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether

there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### I.     Count 1 – Retaliation

To prevail on his First Amendment retaliation claims, Brown must prove that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Defendants argue that the events surrounding the November 6, 2005, cell door incident between Brown and Erick T. Smith do not support the First Amendment retaliation claim.[1] Plaintiff responds that the assault by inmate Smith was the direct result of defendant Black's misconduct. In particular, he claims that Black violated safety rules by assigning a prison security task to a convicted felon.

Protected Speech.  The first element – whether prisoner speech is protected – is governed by the standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Brown must show that he engaged in speech in a manner that is consistent with legitimate penological interests. *Bridges*, 557 F.3d at 551.  Because the defendants do not challenge this element of Brown's retaliation claim, the Court assumes for the purposes of this motion that Brown engaged in protected speech on various occasions prior to November 6, 2005.  For example, he outlined his concerns regarding aspects of prison life in correspondence sent to Illinois Governors and corrections officials (Doc. No. 1-2, pp. 2-19; Doc. No. 1-3, pp. 6, 25-26).

---

[1] The defense position that the relevant facts "fail to state any recognizable constitutional claim" is evaluated under the summary judgment standard.

Deprivation Likely to Deter First Amendment Activity. Brown has presented evidence that he was a victim of a physical and verbal assault by Erick T. Smith, a fellow inmate, on November 6, 2005. On two prior occasions, Brown and Smith disagreed about who should close Brown's cell door after the weekly distribution of supplies. Brown was unwilling to compromise his position that he should be the one to close his own cell door after receiving supplies.

Defendant Black was working as a correctional officer at the time. On November 6, 2005, he was opening cell doors in the unit so that supplies could be distributed to inmates. Black may have been aware of some tension developing between Brown and Smith. The injury occurred when Smith tried to close the door to Brown's cell. Because Brown was standing in the doorway opening at the time, the door struck the side of Brown's body from the shoulder to the hip. Brown pushed the door open, then closed it himself. Smith and Brown both registered complaints about the incident with Black, who took Smith's side in the dispute. When Brown informed Black that he would file a grievance, Black responded, "file all the grievances you want. They ain't gong to go nowhere." (Doc. No. 65-1, p. 28).

After November 6, 2005, Brown filed grievances and sent written correspondence to prison and government officials (Doc. No. 1-3, pp. 2-5, 7-11, 19; Doc. No. 1-4, pp. 2-30). In light of this post-incident First Amendment activity, Brown cannot show that the November 6, 2005, assault by Smith deterred him from exercising his right to free speech.

Causation. Following the Supreme Court's decision in *Gross v FBL Financial Services*, ___U.S. ___ ; 129 S.Ct. 2343 (2009), plaintiff must demonstrate but-for causation unless a statute provides another standard. *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir.2009).[2] The

---

[2] At the very least, Brown must prove that his protected speech was a motivating factor for the offensive action. *See Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir.2009), which

evidence could not support a reasonable inference that Brown's letters to Governors and the like caused Black to engage in misconduct which caused Erick T. Smith to assault Brown with a cell door. No facts suggest that Black knew about Brown's correspondence or that the correspondence served to motivate Black to allow tension to mount between Brown and Smith. Rather, Brown's injury was a direct result of his disagreement with Smith.

This aspect of the motion has merit. Defendants Black, Wilkerson, Bradford, Lambert, and Garnett have shown that they are entitled to judgment in their favor on the retaliation portion of Count 1.

## II.     Count 1 – Failure to Protect

The defendants also seek judgment in their favor as to Brown's alternative theory that Black failed to protect him from the harm caused by inmate Erick T. Smith. Brown suggests that Black generated the circumstances leading to the cell door assault and his resulting injury by improperly assigning the cell-door-closing task to Smith, a convicted felon.

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. However, constitutional liability does not result every time one inmate hurts another. The Eighth Amendment is violated only when the prison officer has a sufficiently culpable state of mind. The prison officer must either intentionally subject the inmate to a substantial risk of serious harm or act or fail to act with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Sufficient culpability exists if the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and drew that inference. *Id*. at 847. That is, the officer must

---

suggests that the "motivating factor" standard may apply at the summary judgment stage.

know about a specific, preventable danger and do nothing to prevent harm from occurring. *Guzman v. Sheahan*, 495 F.3d 852, 856 (7th. Cur. 2007). Ordinary negligence – the failure to take reasonable steps to alleviate a risk that should have been perceived – is not a basis for liability. *Farmer v. Brennan,* 511 U.S. at 828. However, proof that a serious risk was obvious to a correctional officer may convince a fact finder that the officer knew of the risk and chose feigned ignorance over preventative action. *Id.* at 842.

The materials submitted do not suggest that Black was aware that Brown faced a substantial risk of injury from Smith on November 6, 2005, and did nothing to guard Brown against anticipated harm. Assuming that Black had some vague understanding of a degree of tension growing between Brown and Smith, the evidence does not show that he actually expected that a disagreement over a petty matter (who should close Brown's cell door after supplies are distributed) would culminate in a physical assault. When Black was notified of the cell door assault, he took reasonable steps to resolve the dispute in order to prevent further harm. Black informed Brown that the task of closing cell doors had been assigned to Smith as part of his work detail and advised Brown to sit on his bunk and let Smith close the door (Doc. No. 65-1. P. 27). Despite Brown's convictions that Black took the wrong side in the dispute, it remains that Black made a reasonable effort to referee the dispute and put the matter at rest. In short, Black responded reasonably to any substantial risk of serious harm that he actually perceived.

Defendants Black, Wilkerson, Bradford, Lambert, and Garnett have shown that they are entitled to judgment in their favor on the "failure to protect" theory of recovery under Count 1.

### III.   Count 3

In this Count, plaintiff challenges as retaliatory a decision to transfer him from Big Muddy Correctional Center to Lawrence Correctional Center on March 15, 2006. The defendants seek

judgment in their favor on the basis that Brown's protected speech did not cause the transfer. They point to evidence that Brown was transferred along with two other inmates because their actions were perceived as stirring inmate reaction to a death at the Big Muddy facility. Plaintiff argues that this rationale is insufficient to show that the material facts are undisputed. He also maintains that the proposed rationale is false.

As noted above, plaintiff must demonstrate but-for causation unless a statute provides another standard. The materials on file show that defendants Wilkerson, Bradford, and Lambert reviewed and/or approved a transfer report on March 13 or 14, 2006 (Doc. No. 65-1, p. 90). The transfer report was forwarded to Sandra Funk, who approved a reclassification and transfer to the Lawrence facility on March 20, 2006. The reason provided for the request was "administrative concerns." The details of those administrative concerns are not evident from the transfer report and Funk has no personal recollection of the circumstances. Based on a note in her file, she believes she obtained a verbal explanation from the transfer coordinator, which led her to form the impression that someone thought Brown and two other inmates were stirring the inmate population at Big Muddy after a homicide. It is not clear that Funk's impression reflects the rationale held by these defendants at the time they recommended or approved the transfer request.

Plaintiff responds that Big Muddy was locked down during the relevant period, which prevented him from interacting with and inciting other members of the prison population in a manner that might have been perceived as stirring up the inmate population. He suggests that the rationale offered for the transfer is a ruse based on an impossible version of events.

Assuming that plaintiff is correct – that he did nothing to generate legitimate administrative concerns – that evidence could create a credibility issue if the defendants' reason for recommending

the transfer match up with Funk's reason for approving it. However, this potential for a credibility dispute does not satisfy plaintiff's burden of proving causation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)(the prospect of a witness credibility challenge does not avoid summary judgment). At the summary judgment phase of the case, plaintiff may no longer rely on allegations or suspicions. He must come forward with evidence that these defendants recommended a transfer because he engaged in protected First Amendment activity.

On this point, plaintiff may be arguing that supporting evidence exists but is not available because he is confined in prison and was caught off guard by the defense position (Doc. No. 73). This position lacks merit for several reasons. First, the rationale presented by the defense does not affect plaintiff's burden to prove the causation element of his retaliation claim. Regardless of the defense explanation, Brown must present evidence suggesting that retaliation for protected activity was at least a factor motivating the transfer decision. Also, throughout the pretrial phase of this case, plaintiff has demonstrated the ability to litigate his claims. He has a considerable degree of knowledge and intelligence. He keeps records, interacts with other prisoners and staff members, advocates on behalf of himself and other inmates, acquires documents, presents exhibits, and formulates and articulates arguments on substantive and procedural issues. The Court personally assessed Brown's litigation skills at the June 11, 2009, hearing and remains satisfied that Brown has represented himself adequately through the summary judgment phase of this case. He has received a fair opportunity to collect and present evidence suggesting that the March, 2006, transfer was retaliatory.

Brown has presented some evidence supporting his belief that his transfer was retaliatory. The materials he relies on show that he sent written correspondence to Salvador Godinez, the chief

of staff, on February 14 and March 1, 2006. Godinez sent a response, which suggests that Brown's concerns were shared with members of the administrative staff at Big Muddy (Doc. No. 1-4, p. 5). A short time later, defendant Julie Wilkerson met with Brown and asked him to speak with her about some of the concerns he had expressed in his written correspondence to Godinez. Brown agreed to have the conversation but indicated his preference was to speak at a different location. Brown did not ask Wilkerson for a transfer.

Defendant Wilkerson spoke with Brown again the day before he was transferred. She informed Brown that she had a meeting about him with defendants Bradford, Lambert, and Garnet. Wilkerson, Lambert, and Bradford signed off on the transfer report the day of that meeting.

The March 15, 2006, transfer took place the day after a lock-down at Big Muddy was lifted. Brown was transferred from Big Muddy to Lawrence along with two other inmates. He did not commit any disciplinary infractions that might justify a disciplinary transfer.

Transfers are commonplace in the Illinois Department of Corrections. The transfer office processes approximately one thousand transfers and initial classifications each week. Prior to his incarceration at Big Muddy, plaintiff had been confined at a number of other correctional facilities.

This evidence is sufficient to support a weak inference of retaliation. A factual dispute remains regarding the motives of defendants Wilkerson, Lambert, and Bradford in recommending or approving the transfer.

### IV. Qualified Immunity

The defendants also assert the affirmative defense of qualified immunity. In light of the foregoing analysis, the defense is moot as to the retaliation claim against Black, the failure to protect claim against Black, and the retaliation claim against Garnett. The remaining defendants

suggest that they are entitled to qualified immunity on Count 3 because they recommended plaintiff's transfer for reasons consistent with legitimate penological objectives. The Court is unable to make that finding on the basis of a transfer report listing "administrative concerns" and a note which may or may not describe the motives of the remaining defendants. The qualified immunity defense is unsupported at this time.

### V.  Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 65) be GRANTED in part and DENIED in part. At the conclusion of this case, judgment should be entered in favor of defendants Black, Wilkerson, Bradford, Lambert, and Garnett on Count 1 and in favor of defendants Black and Garnett on Count 3. If this recommendation is adopted, Count 3 will remain for trial as to defendants Ford, Wilkerson, Lambert, and Bradford.

**SUBMITTED:  August 4, 2010 .**

  S/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**